# United States Court of Appeals
## For the First Circuit

No. 18-1973

EDGAR ROLANDO TAY-CHAN,

Petitioner,

v.

WILLIAM P. BARR,
UNITED STATES ATTORNEY GENERAL,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Thompson, and Barron,
Circuit Judges.

Stanley H. Cooper on brief for petitioner.
Joseph H. Hunt, Assistant Attorney General, Civil Division, John S. Hogan, Assistant Director, Office of Immigration Litigation, and Andrea N. Gevas, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, on brief for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), William P. Barr has been substituted for former Acting Attorney General Matthew G. Whitaker as the respondent.

March 13, 2019

**THOMPSON**, <u>**Circuit Judge**</u>.

We find ourselves explaining once again that "[m]otions to reopen -- especially untimely motions to reopen -- are disfavored in immigration cases.  Consequently, an alien who seeks to reopen removal proceedings out of time ordinarily faces a steep uphill climb."  <u>Pineda</u> v. <u>Whitaker</u>, 908 F.3d 836, 838 (1st Cir. 2018) (quoting <u>Sihotang</u> v. <u>Sessions</u>, 900 F.3d 46, 48 (1st Cir. 2018)).  In today's case, that demanding hike is attempted by petitioner Edgar Rolando Tay-Chan ("Tay-Chan"), a Guatemalan native and citizen who first came to the U.S. in 2003.[1]  He was later charged with removability, and now, with his immigration proceedings not going the way he had hoped, Tay-Chan challenges the Board of Immigration Appeals's ("BIA") denial of the motion to reopen that he filed nearly seven years late.  Because the BIA did not abuse its discretion in so doing, we uphold the BIA's rejection of the motion to reopen and deny Tay-Chan's petition for judicial review.

## BACKGROUND

Tay-Chan was born in Guatemala City, Guatemala in 1978, where he received a fourth-grade education while living in a

---

[1] There's some debate as to whether Tay-Chan entered the U.S. in 2003 or 2004.  The government and the notice to appear list his date of entry as August 2004, but Tay-Chan has repeatedly stated that it was the summer of 2003.  The precise date of entry having no bearing on our analysis of the issues presented on appeal, we assume it was 2003.

violent neighborhood overrun by gangs. In need of a job to help support his impoverished family, an eleven-year-old Tay-Chan left school and began working at a local autobody shop, which, as it turns out, was heavily involved in the neighborhood's criminal activity. When Tay-Chan was fifteen, a member of MS-18 sought to recruit Tay-Chan; in response, Tay-Chan tried to avoid any interactions with members of MS-18. Unfortunately, this approach didn't pan out long-term: Tay-Chan was later shot five times by an MS-18 member. All told, over the years, Tay-Chan and his family had quite a few violent encounters with MS-18, several of which resulted in the deaths of Tay-Chan's family members.[2]

To escape all this violence, Tay-Chan entered the U.S., without inspection or detention, through the Mexico-Arizona border. A few years later, the Immigration Service of the Department of Homeland Security initiated removal proceedings against Tay-Chan by issuing a notice to appear on April 25, 2006, alleging he was removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) and (7)(A)(i)(I) (establishing removability for entrance into the U.S. without inspection or parole and for the absence of a valid immigrant visa, respectively). Tay-Chan hired an attorney, and

---

[2] Tragically, Tay-Chan's brother was shot and killed by gang members looking to extort money from him, and two of his cousins died under similar circumstances. And, of the two children Tay-Chan ultimately left in Guatemala when he came to the U.S., one was fatally shot by MS-18 members in 2016.

thereafter admitted the truth of the factual allegations and conceded removability, but applied for withholding of removal. In the alternative, Tay-Chan requested voluntary departure.

At his 2009 withholding of removal hearing before the Immigration Judge ("IJ"), he was represented by a colleague of the attorney he'd hired. Tay-Chan, who does not speak English, had never met this colleague -- he says he was unable to communicate with her due to the language barrier (he did have an interpreter present, we note), and he asserts that he was not informed beforehand that his hearing testimony would be confidential. Before the IJ, Tay-Chan testified as to the crimes committed against him and his family in Guatemala and his fears about returning. Although the IJ found Tay-Chan's testimony credible, he did not find that Tay-Chan had been a victim of past persecution on account of a statutorily protected ground because Tay-Chan was unable to identify why he was a target of the crimes committed. Accordingly, the IJ denied Tay-Chan's application for withholding of removal, but granted his request for voluntary departure.

Tay-Chan appealed, but the BIA agreed with the IJ: although his testimony was credible, Tay-Chan failed to meet his burden of proof for withholding of removal. The BIA acknowledged that Tay-Chan and his family were victims of gang violence, but even so, Tay-Chan had failed to establish that he was persecuted based on a statutorily enumerated ground (such as membership in a

particular social or political group).  See 8 U.S.C. § 1231(b)(3)(A).  The BIA's final order entered on April 14, 2011.

On April 3, 2018, nearly seven years after the BIA denied his appeal, Tay-Chan filed a motion to reopen.  In support of his motion, Tay-Chan argued that he had received ineffective assistance of counsel:  the language barrier between him and his attorney rendered him ill-equipped for the hearing, and, had he understood his testimony would be confidential, he would have testified more specifically as to his past persecution, which in turn would have led the IJ to a different conclusion about Tay-Chan's case.  The BIA denied the motion as time-barred (the motion was filed long after the expiration of the ninety-day deadline, 8 U.S.C. § 1229a(c)(7)(C)(i)), and declined Tay-Chan's invitation to equitably toll the deadline based on the ineffective assistance of counsel claim, finding no showing of due diligence and no resulting prejudice.  Tay-Chan seeks review of that denial.

**STANDARD OF REVIEW**

We review the BIA's denial of Tay-Chan's motion to reopen under the "highly deferential abuse-of-discretion standard." Pineda, 908 F.3d at 840 (citing Bbale v. Lynch, 840 F.3d 63, 66 (1st Cir. 2016)).  In doing so, we bear in mind what we mentioned at the outset:  "a motion to reopen removal proceedings is a disfavored tool, given the threat it poses to finality[.]" Mazariegos v. Lynch, 790 F.3d 280, 285 (1st Cir. 2015) (citing

<u>Perez</u> v. <u>Holder</u>, 740 F.3d 57, 61 (1st Cir. 2014)).  We will uphold the BIA's decision unless Tay-Chan can show that the BIA "committed a material error of law or exercised its authority arbitrarily, capriciously, or irrationally."  <u>Gyamfi</u> v. <u>Whitaker</u>, 913 F.3d 168, 172 (1st Cir. 2019) (citations omitted).

## DISCUSSION

Tay-Chan argues that the BIA abused its discretion when it denied his motion to reopen his claim for withholding of removal.[3]  More particularly, he faults the BIA for declining to equitably toll the deadline by which he should have filed his motion to reopen.

As a general matter, a noncitizen must file a motion to reopen within ninety days of a final administrative order of removal, <u>see</u> 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2), though, as often is the case, there are some exceptions, 8 C.F.R.

---

[3] In his brief, Tay-Chan states that the BIA abused its discretion when it didn't reopen the proceedings, naming both his claims for political asylum and withholding of removal, but he doesn't actually make an argument regarding asylum.  In fact, the asylum piece was not pressed below, either:  at the 2009 hearing, the IJ confirmed that Tay-Chan sought only withholding of removal, and the oral decision went on to explain that Tay-Chan wasn't eligible for asylum anyway.  Tay-Chan didn't argue his asylum eligibility to the BIA.  So, to the extent Tay-Chan intends to chase this down on appeal, it is not properly before us.  <u>See, e.g.</u>, <u>Aguilar-De Guillen</u> v. <u>Sessions</u>, 902 F.3d 28, 34 n.8 (1st Cir. 2018) (citing <u>Ishak</u> v. <u>Gonzales</u>, 422 F.3d 22, 32 (1st Cir. 2005)); <u>Shah</u> v. <u>Holder</u>, 758 F.3d 32, 37 (1st Cir. 2014).

- 7 -

§ 1003.2(c)(3) (for example, the deadline is 180 days when an order is entered in absentia and the alien shows the existence of exceptional circumstances, 8 C.F.R. § 1003.23(b)(4)(iii)(A)(1)). Here, the BIA's final administrative order was issued on April 14, 2011, so the ninety-day window closed on July 13, 2011. Tay-Chan filed his motion to reopen on April 3, 2018, nearly seven years late. We do not dwell on the untimeliness -- Tay-Chan does not argue that his motion was timely, nor does he argue that any statutory exception applies.

Instead, conceding he missed the deadline, Tay-Chan proffers the doctrine of equitable tolling: he says the ninety-day cut-off should have been equitably tolled based on the ineffective assistance provided to him by his attorney. "[T]here was no way for [him] to learn of the legal standard that an attorney is required to perform at until he consult[ed] subsequent counsel[,]" and but for his attorney's conduct, the IJ "may have reached a different decision." In Tay-Chan's telling, the language barrier and poor IJ-hearing prep combined to leave Tay-Chan unaware that the proceeding was confidential. This matters because Tay-Chan, believing what he said would not be kept secret, was too afraid to name his terrorizers -- had he named the specific gang, he says, his case would have ended differently.

But before we assess that argument, we provide the lay of the land on the doctrine of equitable tolling, which "extends

statutory deadlines in extraordinary circumstances for parties who were prevented from complying with them through no fault or lack of diligence of their own."  Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010) (citing Fustaguio Do Nascimento v. Mukasey, 549 F.3d 12, 18-19 (1st Cir. 2008); Gonzalez v. United States, 284 F.3d 281, 291 (1st Cir. 2002)).  Anyone who wishes to have a deadline equitably tolled must establish two things:  "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  It is well settled in this circuit that equitable tolling "is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs," id. (quoting Wallace v. Kato, 549 U.S. 384, 396 (2007)), and the decision to apply equitable tolling is a judgment call, see Cordle v. Guarino, 428 F.3d 46, 48 (1st Cir. 2005).  It follows that the BIA's decision to employ equitable tolling (or not, as the case may be) "will stand unless [its] resolution rests on a material error of law or a manifestly arbitrary exercise of judgment."  Meng Hua Wan v. Holder, 776 F.3d 52, 56 (1st Cir. 2015) (citing Roberts v. Gonzales, 549 F.3d 33, 35 (1st Cir. 2005)).

Our case law is clear that the equitable tolling doctrine should be used very sparingly.  See, e.g., Meng Hua Wan, 776 F.3d at 58 (citing Irwin v. Dep't of Vets. Affairs, 498 U.S. 89, 96 (1990); Guerrero-Santana v. Gonzales, 499 F.3d 90, 94 (1st Cir.

- 9 -

2007)). Actually, around here, it should be used sparingly, if at all -- we have not yet given the thumbs-up on applying equitable tolling to motions to reopen. See, e.g., Neves, 613 F.3d at 36; Chedid v. Holder, 573 F.3d 33, 37 (1st Cir. 2009). But for today, we once again "take our cue from decisions past and assume, without deciding, that the ninety-day rule is subject to equitable tolling." Gyamfi, 913 F.3d at 174-75 (citing Neves, 613 F.3d at 36); see also Pineda, 908 F.3d at 841.

This primer in place, we circle back to Tay-Chan's equitable tolling argument. Below, the BIA declined to equitably toll the ninety-day filing deadline because Tay-Chan did not demonstrate he exercised due diligence in moving to reopen, nor did he provide "a coherent and persuasive explanation for the almost 7 year delay." Recall that Tay-Chan argues that the deadline should be equitably tolled based on his ineffective assistance of counsel claim, which he submits he couldn't have known existed "until he consult[ed] subsequent counsel." Further, he tells us he filed the motion to reopen within thirty days of "being informed" (presumably by "subsequent counsel," though Tay-Chan does not make that explicit) of the "less than competent" representation he'd had before the IJ. But all of this misses the point: his argument tells us nothing about why he waited nearly seven years before taking any steps at all to address his immigration status, and it is this unexplained delay that is so

- 10 -

problematic in that it undermines any assertion that he pursued his rights (the ineffective assistance claim, the motion to reopen) with the requisite due diligence. Neves, 613 F.3d at 36. Indeed, this unexplained inactivity during the years between the BIA's 2011 ruling on his withholding of removal and his 2018 motion to reopen fully supports the BIA's no-due-diligence finding. Pineda, 908 F.3d at 842 (upholding BIA's finding of no due diligence when petitioner waited nearly four and a half years to pursue ineffective assistance of counsel claim and to file motion to reopen); see also Guerrero-Santana, 499 F.3d at 94.[4] We recite what we have explained many times: "[t]he [equitable tolling] doctrine is not available as a means of rescuing a party who has failed to exercise due diligence." Pineda, 908 F.3d at 842 (quoting Guerrero-Santana, 499 F.3d at 94) (alterations in original). We see no abuse of discretion.

And what's more, the due-diligence determination by the BIA here actually "is supportable even if we assume, for argument's sake, that the petitioner received ineffective assistance of counsel." Meng Hua Wan, 776 F.3d at 58 (taking the same approach

---

[4] We do not address the "extraordinary circumstance" element of the equitable tolling doctrine relative to Tay-Chan's case. Even if Tay-Chan gave us something to go on for that element, it would not save his case -- he needed to show both the extraordinary circumstance that stood in his way and due diligence, Neves, 613 F.3d at 36, and, as we just concluded, he has failed to show the latter.

when, even if petitioner had received ineffective assistance, petitioner still didn't take any action regarding his immigration proceedings for more than ten years). Here, even assuming favorably to Tay-Chan that he is correct about the ineffective assistance of counsel, he still has a due-diligence problem: that faulty assistance took place long before he finally moved to reopen his case in 2018 and, as discussed, he offers no account of what he did to diligently pursue his case between the incident of ineffective assistance and ultimately taking action. So, even if the ineffective assistance occurred as Tay-Chan claims, the protracted period of inactivity after it still supports the BIA's conclusion that Tay-Chan did not show due diligence.[5]

In the end, we conclude that the BIA neither committed a material error of law nor acted arbitrarily, capriciously, or irrationally, and, on the record before us, we see no abuse of discretion in the BIA's decision denying the untimely motion to reopen and declining to equitably toll the deadline.

---

[5] As we've just concluded, the ineffective assistance of counsel Tay-Chan claims to have received at the hearing before the IJ does not explain his failure to comply with a years-later, after-the-fact ninety-day deadline. Therefore, we need not reach the merits of his ineffective assistance of counsel claim. Guerrero-Santana, 499 F.3d at 93 (concluding the merits of petitioner's ineffective assistance of counsel claim were immaterial when petitioner had failed to explain how his attorney's poor counsel caused the failure to comply with a temporal deadline).

- 12 -

## CONCLUSION

For the reasons detailed above, we <u>affirm</u> the BIA's order denying Tay-Chan's motion to reopen to adjust status and <u>deny</u> his petition for judicial review.